# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DONITA K. BRATCHER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. CIV-16-303-RAW-SPS |
| | ) |
| **NANCY A. BERRYHILL,** | ) |
| **Acting Commissioner of the Social** | ) |
| **Security Administration,**[1] | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

The claimant Donita K. Bracher requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge (ALJ) erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity.  Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied.  If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born August 27, 1962, and was fifty-two years old at the time of the administrative hearing (Tr. 29). She completed her GED, and has no past relevant work (Tr. 17, 248). The claimant alleges that she has been unable to work since her application date of January 31, 2011, due to lupus, chronic pain, fibromyalgia, bipolar disorder, and arthritis (Tr. 247).

### Procedural History

On April 14, 2012, the claimant applied for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Angelita Hamilton conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 4, 2015 (Tr. 8-19). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b), except that she could never climb ladders, ropes, or scaffolds; she could only occasionally climb ramps and stairs, stoop, kneel, crouch, or crawl, and use upper right extremity to overhead reach; she could frequently balance and

bilateral reach sideways and forward. Finally, the ALJ determined that work must be limited to simple, routine, and repetitive tasks, and only occasional interaction with co-workers, supervisors, and the public, and that she must be free of production rate pace (Tr. 14). The ALJ then concluded that although the claimant had no past relevant work to return to, she was nevertheless not disabled because there was other work she could perform, *i. e.*, blood donor unit assistant, recreation aide, and cafeteria attendant (Tr. 17-18).

## Review

The claimant contends that the ALJ erred by: (i) failing to propose a hypothetical that encompassed all her impairments in the RFC for jobs at steps four and five; (ii) failing to properly consider the evidence, specifically as to state reviewing physicians and consultative examiner opinions; (iii) failing to properly assess her credibility; and (iv) violating *res judicata* when she referenced evidence form a prior application but did not re-open the earlier claim. Because the ALJ failed to properly analyze the evidence in the record, the decision of the Commissioner should be reversed.

The ALJ found that the claimant had the severe impairments of bipolar disorder, arthritis, and degenerative disc disease, as well as the nonsevere impairment of fibromyalgia (Tr. 11). Relevant medical records indicate that the claimant reported a history of neck and back pain going back to 1993 (Tr. 354).

On April 12, 2011, Robert R. Waller, Ph.D., conducted a psychological evaluation of the claimant. Upon examination, Dr. Waller concluded that the claimant's "constellation of symptoms" suggested the presence of an underlying personality

disorder, and he assessed her with mood disorder, NOS, R/O major depressive disorder, R/O bipolar disorder, R/O dysthymic disorder (Tr. 364).

On December 26, 2011, the claimant was taken to Red Rock Behavioral Health Services due to suicidal ideation (Tr. 380).  Notes reflect that the claimant was an alcoholic who relapsed following a fight with her daughter, noting that the claimant had also tried to kill herself a few months earlier (Tr. 387).  She was noted to have alcohol dependence, alcohol induced mood symptoms, and borderline personality traits (Tr. 387).

At a physical consultative examination that same day, Dr. Bill Buffington assessed the claimant with neck pain, fibromyalgia, depression, anxiety, and back pain (Tr. 370-371).

Treatment notes in May 2013 reflect that the claimant was diagnosed with, *inter alia*, psoriatic arthritis and an anxiety disorder (Tr. 430).  A July 2013 examination by Dr. Julie Wiley reflects that the claimant was assessed with rheumatoid arthritis, psoriatic arthritis, lupus, fibromyalgia, PTSD, manic depression, osteoarthritis, and psoriasis (Tr. 435).  Exam notes reflect that she had pain with movement in extension, and left and right side bending, as well as tenderness to palpation throughout her thoracic, lumbar, and sacral regions, with areas of muscle spasms throughout (Tr. 435-440).

On July 23, 2013, Dr. J. Ronald Cruse, Ph.D., conducted a mental status examination of the claimant (Tr. 443-447).  Upon examination, Dr. Cruse noted that she was tearful, her speech was excessive, and her thought processes were tangential, while he described her mood as sad (Tr. 445).  She was oriented to person, place, and purpose, but not to time (Tr. 445).  He found that her recall and immediate memory were average,

but that her concentration and judgment were below average (Tr. 446). He concluded that she was a depressed individual whose current level of functional general intelligence was below average to average; that cognitive problems included impairment in orientation, concentration, and behavioral judgment; that alcohol dependence was in early remission while drug dependence was in sustained remission; that her occupational functioning had been severely impaired for seven months, that interpersonal functioning was severely impaired, and that treatment had produced little in the way of return to full functioning (Tr. 446). He diagnosed her on Axis I with bipolar disorder, severe with psychotic features; PTSD; alcohol dependence, in early full remission, by report and amphetamine dependence, in sustained full remission, by report (Tr. 447).

A nurse practitioner completed a letter stating that the claimant had been a patient at the Mary Mahoney Health Center in Langston, Oklahoma since January 2007, and that she had chronic pain syndrome, fibromyalgia, fatigue, and carpal tunnel syndrome, and that her pain and fatigue limit her ability to work (Tr. 527). She further stated that labs indicated an autoimmune disease or inflammatory arthropathy (Tr. 527).

Notes from Red Rock Behavioral Health on November 20, 2013, indicate the claimant was given a global assessment of functioning (GAF) scores of 43-46 during 2013-2014, and reflect a primary disorder of bipolar disorder NOS, with a secondary diagnosis of alcohol abuse (Tr. 536-565).

Other treatment notes in 2014 reflect the claimant was treated for cervical pain, cervical radicular pain, lumbar pain with radiation down the right leg, and depression at Mercy Clinic Administration (Tr. 566). An MRI of the cervical spine conducted on

January 31, 2014 revealed degenerative disc disease at C3-C4, C4-C5, and C5-C6, no significant foraminal narrowing or significant spinal stenosis, and small right-sided disc herniation at C3-C4 (Tr. 626). An MRI of the lumbar spine revealed minimal disc degeneration and mild disc bulging, while an MRI of the thoracic spine revealed mild right curvature of the midthoracic spine, but no significant degenerative change or acute injuries (Tr. 629-630).

A state reviewing physician determined that the claimant could perform the full range of light work with no postural or manipulative limitations, although on reconsideration this was modified to find that the claimant was limited in reaching overhead with the right arm (Tr. 118-120, 137-139, 373-379). Mental RFC assessments found that the claimant was markedly limited in the ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public (the typical three limitations noted), as well as moderately limited in the ability to maintain attention and concentration for extended periods, accept instructions and respond appropriately to criticism from supervisors, and get along with co-workers or peers without distracting them or exhibiting behavioral extremes (Tr. 120-121, 139-140). The reviewing physicians further determined that the claimant could perform simple tasks in a familiar work setting with routine supervision and no public contact, could relate to supervisors and peers on a superficial work basis, and could adapt to a work situation (Tr. 121, 141).

In her written opinion, the ALJ summarized the claimant's testimony, as well as much of the medical evidence. The ALJ acknowledged the objective tests showing

degenerative disc disease, disc degeneration changes, and facet joint arthritis, as well as her continued complaints of pain, but then noted that the claimant once reported no back pain or stiffness and there were no complaints of radiating pain during follow-up appointments (Tr. 15). She also summarized Dr. Buffington's CE assessment, which pre-dated her application date of April 22, 2013. She then summarized some of Dr. Wiley's findings regarding range of motion and tenderness (Tr. 16). The ALJ then turned to the claimant's mental impairments, noting her long history of mental impairments and alcohol and drug use (Tr. 16). The ALJ made much of recent notes from Red Rock which state that the claimant's mental status was normal and her medications were working; these are the same records indicating chronic mental health conditions as well as GAF scores from 43-46, which the ALJ noted later in her opinion (Tr. 16, 536-564). She further found that Dr. Cruse's exam also supported a finding that her mental status was normal, ignoring the concerns about below average concentration and judgment, as well as her severely impaired occupational judgment (Tr. 16). She then assigned significant weight to the state reviewing physician opinions, and stated that Dr. Cruse's findings regarding the claimant's concentration and behavioral judgment were consistent with the record but that current mental health records revealed a "normal" mental status (Tr. 17). She further rejected the right overhead reaching limitation by the state reviewing physician, citing more recent evidence revealed a normal range of motion; she did not discuss how, *inter alia*, the claimant's degenerative disc disease and disc degeneration were accounted for, but stated that the claimant "does have some limitations in postural movements" that she accounted for in the RFC (Tr. 17). She then determined

that the claimant was not credible, and concluded the claimant was not disabled (Tr. 17).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors are: (i) the length of treatment relationship and frequency of examination; (ii) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ recited Dr. Cruse's opinion favorably and indeed purported to adopt it in total, but did not acknowledge any of the specific limitations Dr. Cruse did include, including the specific problems with concentration, judgment, and occupational functioning. Additionally, the ALJ ignored the opinions of the state reviewing physicians that she could have no public contact. Moreover, the ALJ rejected the claimant's well-documented history of mental health problems by focusing on a recent report of "normal" mental status at the expense of her chronic mental health problems. *See, e. g., Haga v.*

*Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) *and Hamlin*, 365 F.3d at 1219. *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted]. These are significant omissions in that they call into question the claimant's ability to perform in a work setting at all, and ignore that "the ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013), *quoting* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). In any event, it was clearly error for the ALJ to reject without explanation parts of the opinion while finding other parts consistent with the RFC. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

  Because the ALJ failed to properly evaluate the opinions and evidence in the record, the decision of the Commissioner should be reversed and the case remanded for further analysis by the ALJ. If this results in adjustments to the claimant's RFC, the ALJ

should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 9th day of February, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**